1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

9  CHARLES McNELTON,                    )

10           Petitioner,                )        2:00-cv-0284-RCJ-CWH

                                         )

11  vs.                                  )

                                         )        **ORDER**

12  RENEE BAKER, *et al.*,               )

                                         )

13           Respondents.               )

                                         )

14  _____/

15        This is an action for habeas relief under 28 U.S.C. § 2254 brought by Charles McNelton, a

16  Nevada prisoner sentenced to death.  Respondents have filed a motion to dismiss McNelton's second

17  amended petition for writ of habeas corpus.  ECF No. 146.  As the bases for their motion,

18  respondents contend that numerous claims in the petition are time barred by 28 U.S.C. § 2244(d)

19  and/or barred by the doctrine of procedural default.  Respondents also argue that some of

20  McNelton's claims are not cognizable in an action brought under § 2254.

21        McNelton has filed an opposition to the motion (ECF No. 165) and a motion for an

22  evidentiary hearing (ECF No. 163).

23        Having considered the parties' arguments and relevant portions of the record, the court

24  concludes as follows.

25        I.  *Procedural History*

26        On October 8, 1993, after a five-day trial, a jury in the Eighth Judicial District Court for

Nevada found McNelton guilty of one count of first-degree murder with the use of a deadly weapon. After a three-day penalty hearing, the jury found two aggravating circumstances: (1) the murder was committed by a person who was previously convicted of felonies involving the use or threat of violence to the person of another and (2) the murder was committed by a person under a sentence of imprisonment.  The jury imposed a sentenced of death.

The Nevada Supreme Court affirmed his conviction and sentence in a published opinion. *McNelton v. State*, 900 P.2d 934 (Nev. 1995).  McNelton's petition for certiorari with respect to that decision was denied by the U.S. Supreme Court on May 20, 1996.  *McNelton v. Nevada*, 517 U.S. 1212 (1996).  On August 6, 1996, McNelton filed a post-conviction petition for writ of habeas corpus in the state district court.  After the district court appointed counsel, McNelton filed several supplemental pleadings.  The court held an evidentiary hearing on April 3, 1998, and entered a decision on May 18, 1993, denying all of McNelton's claims.  McNelton appealed.

The Nevada Supreme Court affirmed the denial of McNelton's petition in a published opinion. *McNelton v. State*, 990 P.2d 1263 (Nev. 1999).  The remittitur issued on March 17, 2000. On March 7, 2000, McNelton filed a federal habeas petition.  After prolonged discovery proceedings, McNelton filed an amended petition on November 16, 2006.

On April 16, 2007, the respondents filed a motion to dismiss the amended petition on the ground that it contains several unexhausted claims.  In lieu of filing an opposition to that motion, McNelton filed a motion for stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). That motion was granted.

On October 12, 2007, McNelton filed a second post-conviction petition for writ of habeas corpus in state court.  After being amended once, that petition was denied.  McNelton appealed. After the Nevada Supreme Court affirmed the denial of his petition, McNelton unsuccessfully sought rehearing.  The remittitur issued on March 5, 2013.

On April 4, 2013, McNelton moved to reopen these proceedings.  After that motion

2

1  was granted, McNelton filed, on September 27, 2013, the second-amended petition that is the subject

2  of the motion to dismiss currently before the court.

3      II. *Timeliness*

4      The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year

5  filing period for § 2254 habeas petitions in federal court.  28 U.S.C. § 2244(d)(1).  The one-year

6  period begins to run from the latest of four possible triggering dates, with the most common being

7  the date on which the petitioner's state court conviction became final (by either the conclusion of

8  direct appellate review or the expiration of time for seeking such review).  *Id.*  Statutory tolling of

9  the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other

10  collateral review is pending.  28 U.S.C. § 2244(d)(2).

11      Respondents concede that McNelton filed his initial petition herein within the one-year filing

12  period under § 2244(d)(1).  Respondents argue, however, that McNelton's first and second amended

13  petitions were filed after the one-year period had elapsed.  They further argue that several of the

14  habeas claims in his second amended petition are time-barred from federal court review because

15  those claims do not "relate back" to the initial petition.

16      The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a

17  habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition

18  and, therefore, be considered timely under 28 U.S.C. § 2244(d).  In *Mayle*, the Court held that the

19  Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c)(2) (now

20  Rule 15(c)(1)(B)),[1] which allowed an amendment to a habeas petition to "relate back" to the date of

21  the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or

22  sentence," was too broad.  *Id.* at 656-57.  The Court held that an amended claim in a habeas petition

23  relates back for statute of limitations purposes only if it shares a "common core of operative facts"

24

25      [1]  Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic
purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

26

1    with claims contained in the original petition.  *Id.* at 663-64.  The common core of operative facts

2    must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R.

3    Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief.  *Id.* at 661.

4        According to the respondents, Claims Two, Three, Four(B), Five(D), Six(A), Six(I), Six(J),

5    Seven, Nine, Ten, part of Eleven(F), Twelve(A-B), part of Fourteen, Sixteen, Seventeen, Eighteen

6    and Nineteen are untimely because they do not "relate back" to the initial petition.

7        McNelton raises several arguments as to why some or all of his claims are not time-barred.

8    First, he contends that, due to a variety circumstances, he is entitled to equitable tolling of the statute

9    of limitations.  According to McNelton, these circumstances include (1) his reliance on this court's

10   scheduling orders and its "standard procedure" for adjudicating capital cases in effect at the time he

11   initiated this proceeding in 2000, (2) the State's dilatory conduct during discovery proceedings, and

12   (3) delays brought about by lack of counsel or change of counsel.

13       The Supreme Court has held that, in appropriate cases, equitable tolling is applicable to the

14   statute of limitations imposed by § 2244(d).  *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).

15   Under *Holland*, a habeas petitioner is entitled to equitable tolling only if he can show "(1) that he has

16   been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way

17   and prevented timely filing."  *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))

18   (internal quotation marks omitted).  The application of equitable tolling is "highly fact-dependent."

19   *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).; *Whalem/Hunt v. Early*, 233

20   F.3d 1146, 1148 (9th Cir. 2000); *see also Holland*, 130 S.Ct. at 2565 ("often fact-intensive").  "[T]he

21   threshold necessary to trigger equitable tolling ... is very high, lest the exceptions swallow the rule."

22   *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Miranda v. Castro*, 292

23   F.3d 1063, 1066 (9th Cir. 2002), and *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

24       McNelton's conviction became final for the purposes of triggering the one-year statutory

25   period on May 20, 1996, the date on which the Supreme Court denied his petition for certiorari in

26

4

relation to his direct appeal. *See Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001) (noting that judgment becomes "final"either by the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment, or by the expiration of the time to seek such review).  Under 28 U.S.C. § 2244(d)(2), the statutory period was tolled from August 7, 1996, until March 17, 2000, while his first state collateral review proceeding was pending. Accordingly, the one-year filing period elapsed for McNelton on December 29, 2000, approximately a month before the court entered its first scheduling order (ECF No. 7).

Pursuant to this court's appointment, the Federal Public Defender for Nevada (FPD) appeared as counsel for McNelton in this action on May 10, 2000.  ECF Nos. 5/6.  Consistent with the common procedure in effect at the time, this court entered scheduling orders that set aside considerable time for petitioner to gather and review the record and to conduct discovery, if authorized, *prior* to deciding whether to file an amended petition.  ECF Nos. 7/14.  And, as often occurred in this court's capital habeas cases, discovery proceedings extended well beyond the initial time-frame established by the court.  The court granted numerous extensions for time in relation to both discovery proceedings and the deadline for the amended petition, most of which were pursuant to a stipulation by the parties.  Consequently, McNelton's first amended petition was filed approximately five years after the initial deadline set by the court.

Because the statutory period had expired prior to the issuance of the first scheduling order, McNelton cannot plausibly argue that this court's scheduling orders were responsible for the untimely filing of his claims.  Moreover, an order that simply sets forth a filing date for an amended petition comes with no assurance that new claims for relief in that petition will relate back to the initial petition for timeliness purposes.  The same goes for orders that merely extend that filing date.

McNelton is correct that, at the time he initiated this action, the common procedure of this court in capital habeas cases was to allow counsel to spend a considerable amount of time engaging in pre-amendment activities, such as record review, investigation, and authorized discovery.

1    Moreover, there is little question that, prior to the Supreme Court's decision in *Mayle* on June 23,

2    2005, both parties to this action were proceeding based on the assumption that the claims in

3    McNelton's amended petition, when filed, would not be subject to dismissal under § 2244(d).

4           Unfortunately for McNelton, whatever representations this court may have made to him at

5    the time, in relation to its standard practice or otherwise, will not provide grounds for equitable

6    tolling absent a showing that they "affirmatively misled" him.  *See Ford v. Pliler*, 590 F.3d 782, 786

7    (9th Cir. 2009).  In *Ford*, the district court had denied the petitioner's motion to stay his partially

8    unexhausted petition and gave him the following three options:  (1) to dismiss his petitions without

9    prejudice and then, after exhausting in state court the previously unexhausted claims, to re-file in

10   federal court; (2) to dismiss the unexhausted claims and present the federal court with only his

11   exhausted claims; or (3) to demonstrate that all of his claims had already been exhausted in state

12   court.  *Id*. at 785.  Ford chose the first option.  *Id*.  When he returned to federal court post-

13   exhaustion, his petition was untimely and, as such, dismissed with prejudice.  *Id*.

14          In construing the Supreme Court's opinion in the case above (*Pliler v. Ford*, 542 U.S. 225

15   (2004)), the court of appeals held that Ford was not affirmatively misled, and thus not entitled to

16   equitable tolling, even though the one-year limitation period had already expired when the district

17   court had given him the three options listed above.  *Id*. at 786-88.  The court noted that, "[i]n order to

18   show that he was affirmatively misled, Ford needed to point to some inaccuracy in the district court's

19   instructions."  *Id*. at 788.  McNelton has likewise failed to identify an affirmative misstatement in

20   this court's instructions to him.  While McNelton may have justifiably assumed that he was free to

21   amend his initial petition without timeliness concerns, at no point did the court indicate to him that

22   any new claims added after December 29, 2000, would necessarily relate back to that petition for the

23   purposes of 28 U.S.C. § 2244(d).

24          McNelton attempts to analogize his situation to that of the petitioner in *Sossa v. Diaz*, 729

25   F.3d 1225 (9th Cir. 2013).  In *Sossa*, the court of appeals held that the lower court should have

26

6

granted equitable tolling to a *pro se* habeas petitioner who had sought and obtained extensions of time to file an amended petition beyond the statutory deadline.  729 F.3d at 1235.  The court reasoned that Sossa's request to extend the due date for his amended petition was premised "on the understanding that if the request were granted and [he] filed his amended petition by the new due date, the petition would be deemed timely," and that "[b]y granting Sossa's request . . . , the magistrate judge conveyed that the premise of Sossa's request was accurate."  *Id*. at 1233.  According to the court in *Sossa*, "the magistrate judge's order granting Sossa's extension request affirmatively misled him in the very manner that the Supreme Court's decision in *Pliler v. Ford*,[2] and our decisions in *Ford* and *Brambles*,[3] require."  *Id*. (footnotes added).

Important factors in *Sossa* distinguish it from this case.  As noted by the court in *Sossa*, "grounds for equitable tolling under § 2244(d) are 'highly fact-dependent'" and "the Supreme Court has 'made clear that often the exercise of a court's equity powers . . . must be made on a case-by-case basis.'"  *Id*. at 1229 (citations omitted).  Proceeding without counsel and with limited access to legal resources,[4] Sossa filed his amended petition only eighteen days after the statutory deadline.  In addition, Sossa's initial petition contained no substantive claims.  A decision to deny equitable tolling in *Sossa*, and in *Prieto v. Quarterman*, 456 F3d 511 (5th Cir. 2006) (a case heavily relied upon in *Sossa*), would have meant the complete dismissal of the petitioner's case, an unreasonable result under the circumstances.  *Cf. Rhines v. Weber*, 544 U.S. 269, 278 (2005) (recognizing that, when an exhaustion stay is not appropriate, the court should allow the petitioner to delete the unexhausted claims "if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain

---

[2]  542 U.S. 225 (2004).

[3]  *Brambles v. Duncan*, 412 F.3d 1066 (9th Cir. 2005)

[4]  In addition to granting equitable tolling based on the magistrate's order granting an extension of time, the court further held "that Sossa's allegations regarding his access to the law library and other resources may entitle him to equitable tolling through June 11, 2008, when he constructively filed his amended habeas petition."  *Id*. at 1237.

7

federal relief").  In both cases, the court of appeals found that the lower's orders extending time to file an amended petition were "crucially misleading."  *Sossa*, 729 F.3d at 1233.

Here, McNelton's timely initial petition contains numerous substantive claims.  Counsel appeared on his behalf in this case with more than seven months remaining of the one-year statutory filing period.  The court entered no scheduling orders (much less "crucially misleading" ones) prior to the expiration of the period.  Moreover, McNelton filed his first amended petition seventeen months after the decision in *Mayle* clarified the relation back doctrine as applied to habeas cases (and at least five months after discovery proceedings had been completed (see ECF No. 88)).   Even if it were to accept that its scheduling of proceedings herein misled McNelton, this court is not convinced that McNelton pursued his rights diligently.  *See Holland*, 560 U.S. at 649.

The court also rejects McNelton's argument that the State's alleged dilatory conduct in complying with discovery requests is a factor that should be considered in determining whether he is entitled to equitable tolling.  For reasons mentioned above, the State's conduct in complying with discovery requests is not causally connected to the timeliness of McNelton's claims.  As for the changes in federal habeas counsel, McNelton has been represented throughout these proceedings by the FPD.  Mere changes in the FPD staff members assigned to his case do not qualify as an "extraordinary circumstance" that warrants equitable tolling.

McNelton also argues that his claims are not time-barred because the State waived the statute of limitations as a procedural defense.  He contends that this case is "materially indistinguishable" from *Wood v. Milyard*, 132 S.Ct. 1826 (2012), a case in which it was found that the state had deliberately waived a challenge to the timeliness of a habeas petition.

In *Wood*, the Supreme Court reversed the Tenth Circuit's *sua sponte* decision to raise on appeal the timeliness of a habeas petition and then dismiss the petition as untimely, after the state had expressly declined to oppose the petition on that ground before the district court and the district court had ruled upon the merits of the petition.  *Wood*, 132 S.Ct. at 1829, 1834–35.  McNelton's

8

1   arguments notwithstanding, the holding in *Wood* speaks primarily to the court of appeals exceeding

2   the scope of its appellate review and says very little about what constitutes a waiver of the statute of

3   limitations as a procedural defense in a habeas case.  The Court was particularly bothered by the fact

4   that the court of appeals had *sua sponte* disposed of the case on timeliness grounds when the lower

5   court had expended the time and resources necessary to resolve the case on the merits.  *See Wood*,

6   132 S. Ct. at 1834 ("When a court of appeals raises a procedural impediment to disposition on the

7   merits, and disposes of the case on that ground, the district court's labor is discounted and the

8   appellate court acts not as a court of review but as one of first view.")

9           As for the finding that the State had waived its timeliness challenge, the Court in *Wood* stated

10  as follows:

11          "[W]aiver is the 'intentional relinquishment or abandonment of a known
            right.'"  *Kontrick v. Ryan*, 540 U.S. 443, 458, n. 13, 124 S.Ct. 906, 157 L.Ed.2d 867
12          (2004) (quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123
            L.Ed.2d 508 (1993)).  The State's conduct in this case fits that description.  Its
13          decision not to contest the timeliness of Wood's petition did not stem from an
            "inadvertent error," as did the State's concession in *Day* [*v. McDonough*, 547 U.S.
14          198, 126 S.Ct. 1675 (2006)].  See 547 U.S., at 211, 126 S.Ct. 1675.  Rather, the State,
            after expressing its clear and accurate understanding of the timeliness issue, see
15          *supra*, at 1831 – 1832, deliberately steered the District Court away from the question
            and towards the merits of Wood's petition.  In short, the State knew it had an
16          "arguable" statute of limitations defense, see *supra*, at 1832, yet it chose, in no
            uncertain terms, to refrain from interposing a timeliness "challenge" to Wood's
17          petition. . . .

18  *Wood*, 132 S.Ct. at 1835.

19          Here, there is very little to indicate that the State intentionally relinquished or abandoned its

20  right to contest the timeliness of McNelton's claims. Unlike in *Wood*, the State did not expressly

21  indicate to this court that it would not be challenging the McNelton's claims on timeliness grounds.

22  The State's failure to raised the timeliness as a defense in moving to dismiss McNelton's first

23  amended petition did not constitute an intentional relinquishment or abandonment of the its right to

24  interpose the defense.   Also, in consenting to the exhaustion stay in this case, the respondents stated

25  that they were doing so "with the understanding that they are not waiving **any** procedural defense

26

9

that may apply to the Petition, or the individual claims presented therein, when McNelton returns to the federal courts, even if those defenses have not been raised in their Motion to Dismiss Amended Petition . . . , filed on April 16, 2007, Docket #95." ECF No. 99, p. 2 (emphasis in the original). Accordingly, this court concludes that the State did not waive timeliness as a defense to the claims in McNelton's second amended petition.

McNelton next argues that Claim Nine is not time-barred because he filed the claim within a year of the triggering date under 28 U.S.C. § 2244(d)(1)(D), which begins the one-year period on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Claim Nine is a claim alleging a constitutional violation based on *Brady v. Maryland*, 373 U.S. 83 (1963). More specifically, McNelton alleges in Claim Nine that the prosecutor failed to disclose impeachment evidence for several key state witnesses. According to McNelton, he was "forced into protracted litigation before he was able to discover the extent of the State's undisclosed impeachment evidence." ECF No. 165, p. 44.[5]

For the purposes of § 2244(d)(1)(D), the diligence required is not maximum feasible diligence, but rather reasonable diligence in the circumstances. *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir.2012). Although due diligence is measured by an objective standard, a court will also consider the petitioner's particular circumstances. *Id.* at 1235-36 (citing including both impediments and resources that would affect discovery of the facts, such as physical confinement, representations made by the government, and familial assistance).

Here, McNelton does not mention any efforts he made to obtain the information at issue prior to, or aside from, his discovery requests in this proceeding. He appears to be claiming that the State's failure to disclose the evidence is, in itself, sufficient to establish his diligence. That might suffice if the information was exclusively in the possession of the State or the State intentionally concealed the information, but he has not shown that either is the case here. *Cf. Cone v. Bell*, 492

---

[5] Citations to page numbers in this court's record are based on CM/ECF pagination.

F.3d 743, 754 (6th Cir.2007) (in order to establish "cause" under *Brady* for a procedural default, there must be prosecutorial concealment and misrepresentation; the mere failure to disclose by itself is not enough).  Also, McNelton does not specify, or even suggest, a triggering date under § 2244(d)(1)(D), leaving this court in the dark as to whether Claim Nine was filed within one year of the date on which he was able to discover the factual predicate for the claim.  Accordingly, this court must conclude that Claim Nine was untimely filed.

While McNelton insists that his claims are timely based on the arguments above, he also contends that Claims Two, Four(B), Five(D), Six(A), Six(J), Ten, Eleven(F), Twelve(B), Fourteen, and Nineteen are timely because they relate to claims raised in his original petition.

In Claim Two, McNelton alleges that was deprived of effective assistance of counsel because his trial counsel failed to investigate, develop, and present substantial mitigation evidence in the penalty phase of his trial.  This claim shares a common core of operative facts with a claim in McNelton's original petition.  ECF No. 1, p. 116-17.  As such, Claim Two is not time-barred.

In Claim Four(B), McNelton alleges that his trial counsel were ineffective for failing to investigate the backgrounds of state eyewitnesses prior to presenting the defense that the eyewitnesses had falsely accused Mr. McNelton of the murder.  This claim also shares a common core of operative facts with a claim in McNelton's original petition.  ECF No. 1, p. 75-76.  As such, Claim Four(B) is not time-barred.

In Claim Five(D), McNelton alleges that his counsel were ineffective by failing to investigate and rebut the state's penalty phase presentation of his alleged future dangerousness in prison by obtaining the services of an institutionalization expert.  McNelton argues that the claim relates back to allegations in his initial petition related to the prosecution's improper argument regarding future dangerousness, and his counsel's failure to object to it, and to counsel's failure to prepare for the penalty phase of his trial.  The core facts underlying the Claim Five(D) are different in type from the core facts alleged in the initial petition.  *See Schneider v. McDaniel*, 674 F.3d 1144, 1151-52 (9th

Cir. 2012).  Therefore, relation back is not appropriate.

In Claim Six(A), McNelton alleges that trial counsel were ineffective by virtue of their ineffective voir dire examination.  While McNelton's initial petition raises various claims regarding counsel's performance during jury selection, Claims Six(A) is based on aspects of the voir dire that are wholly unrelated to those claims.  ECF No. 1, 71-75; ECF No. 133, p. 78-79.  Claim Six(A) does not relate back and, therefore, is untimely.

In Claim Six(J), McNelton alleges that the attorneys who represented him lacked the necessary experience to litigate a capital case and were unprepared for the higher level of representation required.  McNelton argues that this claim relates back to the numerous claims of ineffective assistance of counsel (IAC) raised in his initial petition.  This court agrees, but notes that Claim Six(J), because it does not challenge specific aspects of counsel's performance, is meritorious only if counsel's performance constituted  a complete failure to test the prosecutor's case.  *See Bell v. Cone*, 535 U.S. 685, 697-98 (2002).  As such, Claim Six(J) is not time barred, but appears to lack merit.

In Claim Ten, McNelton alleges that the ineffective performance of trial counsel and trial court error combined to prevent him from selecting a fair and impartial jury during voir dire proceedings.  This claim is time-barred for the same reason Claim Six(A) is time-barred.

Claims Eleven(F) and Twelve(B) both challenge the trial court's alleged failure to issue a unanimity instruction requiring the jury to find beyond a reasonable doubt that aggravating circumstances were not outweighed by mitigating evidence.  McNelton's initial petition contains no reference the trial court's failure to issue such an instruction.  Consequently, these claims do not relate back and, therefore, are time-barred.

In Claim Fourteen, McNelton alleges that he received ineffective assistance of appellate counsel due to counsel's failure to communicate with him and to raise on direct appeal various issues contained in his current federal petition.  Respondents concede that the claim relates back to the

extent that it challenges appellate counsel's failure to communicate and to raise the grounds alleged in Claims Eight(C), Eleven(A-B), and Fifteen of his second amended petition in this court.  Having reviewed the ineffective assistance of appellate counsel claims raised in the initial petition (i.e. ECF No. 1, p. 119-138), this court finds that no additional appellate IAC claims in the second amended petition relate back to the initial petition.  IAC claims based on appellate counsel's failure to raise issues contained in McNelton's second amended petition do no relate back merely because the underlying error was asserted in McNelton's initial petition.  *See Schneider*, 674 F.3d at 1151-52.

As for Claim Nineteen, this court agrees with McNelton that his cumulative error claim is timely filed in the sense that this court will consider the cumulative impact of constitutional errors properly brought before this court.  *See Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (stating that "even if no single error were prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.' ") (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).

Finally, McNelton argues that he is allowed to bypass the time bar imposed by § 2244(d) because he received ineffective assistance of counsel in his state post-conviction proceeding.  In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court held that, in collateral proceedings that provide the first occasion to raise a claim of ineffective assistance at trial, ineffective assistance of post-conviction counsel in that proceeding may establish cause for a prisoner's procedural default of such a claim.  *Martinez*, 132 S. Ct. at 1315.  In essence, McNelton is asking this court's to apply the *Martinez* holding to excuse his failure to comply with the statute of limitations.

The Court in *Martinez* stressed that its holding was an equitable exception to the procedural default doctrine.  *Martinez*, 132 S. Ct. at 1318.  As discussed above, the Supreme Court established the contours of its equitable exception to the AEDPA statute of limitations in *Holland*.  Absent authority from the Court, this court is not prepared to relax the standard for equitable tolling outlined in *Holland*.

13

1    Based on the foregoing, the court concludes that Claims Three, Five(D), Six(A), Six(I),

2    Seven. Nine, Ten, Eleven(F) (to the extent it challenges the jury instructions identified in claims

3    Twelve(A-B), Twelve(A-B), Fourteen (except for allegations that appellate counsel was ineffective

4    for failing to raise Claims Eight(C), Eleven(A-B), and Fifteen), Sixteen, Seventeen, and Eighteen are

5    time-barred.

6    III.  *Procedural Default*

7    A federal court will not review a claim for habeas corpus relief if the decision of the state

8    court denying the claim rested on a state law ground that is independent of the federal question and

9    adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  The Court

10   in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in
> state court pursuant to an independent and adequate state procedural
> rule, federal habeas review of the claims is barred unless the prisoner
> can demonstrate cause for the default and actual prejudice as a result of
> the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

15   *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

16   A state procedural bar is "independent" if the state court explicitly invokes the procedural

17   rule as a separate basis for its decision.  *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995).

18   A state court's decision is not "independent" if the application of a state's default rule depends on a

19   consideration of federal law.  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).  Also, if the

20   state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit

21   has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio*

22   *v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir.

23   2003).

24   A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established

25   at the time of the petitioner's purported default."  *Calderon v. United States Dist. Court (Bean)*, 96

26

14

1   F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted).  In *Bennett v.*

2   *Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test

3   for analyzing adequacy.  Under *Bennett*, the State carries the initial burden of adequately pleading

4   "the existence of an independent and adequate state procedural ground as an affirmative defense."

5   *Id*. at 586.  The burden then shifts to the petitioner "to place that defense in issue," which the

6   petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the

7   state procedure, including citation to authority demonstrating inconsistent application of the rule."

8   *Id.*  Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of

9   the state bar rests with the State, which must demonstrate "that the state procedural rule has been

10  regularly and consistently applied in habeas actions."  *Id*.

11          Respondents argue that Claims One, Two, Three, Four, Five (other than Five(C)), Six (other

12  than Six(D)), Seven, Eight (other than Eight(C)), Ten, Eleven (other than Eleven(B)), Twelve,

13  Fourteen (other than the failure to communicate or raise claims Eight(C) and Fifteen on appeal),

14  Fifteen, Sixteen, Seventeen, and Eighteen are procedurally defaulted and should be dismissed.[6]

15  McNelton presented some of these claims to the Nevada Supreme Court in his first state post-

16  conviction proceeding, but the court rejected them on the ground that he had not raised them in the

17  lower court.  *McNelton*, 990 P.2d at 1275-76.  He then presented those claims and several others in

18  his second state post-conviction proceeding.

19          In affirming the lower court's denial of McNelton's second state petition, the Nevada

20  Supreme Court stated:

21                  Because McNelton filed his petition over twelve years after the remittitur
            issued on his direct appeal, the petition was untimely under NRS 34.726(1).  The

22          petition was also successive pursuant to NRS 34.810(2).  The petition was therefore

23  _____

24          [6] In their initial motion, respondents included Claim Nine among these claims, but now concede
    that, under Ninth Circuit precedent, the state court's imposition of a procedural bar with respect to that
    claim was not independent of federal law.  ECF No. 170, p. 38-39.  In addition, respondents argue that

25  the cumulative error claim in Claim Nineteen is subject to the procedural default doctrine, but this court
    concludes otherwise for the same reason it concludes, above, that the claim is not time barred.

26

procedurally barred absent a demonstration of good cause and prejudice.  NRS 34.726(1); NRS 34.810(3).

ECF No. 158-25, p. 3.  The state supreme court rejected McNelton's various arguments that he could establish good cause necessary to overcome the procedural bars.  *Id.*, p. 3-10.

Under Nev. Rev. Stat. § 34.726(1), a petition is untimely if filed later than one year after the entry of the judgment of conviction or, if an appeal has been taken from the judgment, within one year after the Nevada Supreme Court issues its remittitur.  Nev. Rev. Stat. § 34.810 addresses successive petitions and requires dismissal of claims that have already been raised and adjudicated on the merits, as well as claims that could have been raised in an earlier proceeding, but were not.

Respondents meet their initial pleading burden under *Bennett* by asserting that the Nevada Supreme Court's application of Nev. Rev. Stat. § 34.726 and § 34.810, to McNelton's second state post-conviction petition constitutes an independent and adequate state procedural grounds for denying relief.  McNelton raises numerous arguments as to why some or all of his claims are not barred from review.  The court will address these arguments in turn.

First, McNelton argues that the Nevada Supreme Court actually ruled on the merits of several of the claims at issue.  According to McNelton, the Nevada Supreme Court ruled upon the merits of Claims One, Six(C), Six(E), Six(F), Six(H), Eight(A), Eleven(C), Eleven(E), Eleven(F), Twelve(C), Fourteen, and Fifteen.

McNelton contends that the Nevada Supreme Court ruled on the merits of his conflict of interest claim in Claim One and his related ineffective assistance of appellate counsel claim (pleaded as part of Claim Fourteen) when it decided, in his first post-conviction proceeding, that trial counsel was not ineffective in testifying at trial.  As respondents correctly point out, however, the standard applicable to Claim One is the one established by the Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which differs from the standard the Nevada Supreme Court applied to the IAC claim. *McNelton*, 990 P.2d at 1271 (applying the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)).  The adjudication of the IAC claim on the merits is not tantamount to an adjudication of

1  the actual conflict of interest claim.

2         In Claim Six(C), McNelton alleges that trial counsel was ineffective in failing to object to

3  numerous instances of prosecutorial misconduct. Claim Eight(A) is premised on alleged improper

4  argument by the prosecutor. McNelton is correct that the Nevada Supreme Court did adjudicate a

5  claim that trial counsel were ineffective in failing to object to the prosecutor's comment in closing

6  argument that the defense had failed to call a certain alibi witness. *See McNelton*, 990 P.2d at

7  1271-72. That is not sufficient, however, to constitute an adjudication of Claim Six(C) or Eight(A)

8  because that allegation makes up only a small part of the factual allegations supporting either claim.

9         The same goes for Claims Six(E), Eleven(F), and Twelve(C), which are all premised, in

10  small part, on a jury instruction on the statute of limitations for the sale of a controlled substance.

11  The Nevada Supreme Court rejected McNelton's claim that counsel were ineffective in failing to

12  object to the instruction. *Id*. at 1272. But, here again, that ruling was not sufficient to constitute an

13  adjudication of the much broader claims McNelton now alleges.

14         In Claim Eleven(E) and Claim Fifteen,[7] McNelton alleges that his constitutional rights were

15  violated because the trial court failed to dismiss his case pursuant to the Interstate Agreement on

16  Detainers. Claims Six(F) is an IAC claim based on trial counsel's failure to litigate the issue before

17  the trial court. This court agrees with McNelton that the Nevada Supreme Court adjudicated these

18  claims on the merits in his first state post-conviction proceedings. *See id*. at 1273-75.

19         In Claim Six(H), McNelton alleges that trial counsel were ineffective in failing to object to

20  the systematic striking of women during jury selection. The Nevada Supreme Court adjudicated on

21  the merits a claim of trial court error based on "the prosecutor's failure to provide gender-neutral

22  grounds for the exercise of peremptory challenges" (*McNelton*, 900 P.2d at 935), but not an IAC

23  claim based on counsel's failure to object.

24  _____

25         [7] Claim Eleven(E) merely incorporated Claim Fifteen into an overarching claim of cumulative
   trial court error under Claim Eleven.

26                                           17

In Claim Eleven(C), McNelton claims that the trial court improperly allowed prior bad act testimony without holding a hearing pursuant to *Petrocelli v. State*, 692 P.2d 503 (Nev. 1985).  In the context of adjudicating McNelton's IAC claim, the Nevada Supreme Court discussed, at length, whether the trial court erred in failing to hold a *Petrocelli* hearing and, if so, whether such failure required reversal of McNelton's conviction.  *McNelton*, 990 P.2d at 1268-70.  There is no indication, however, that the state supreme court considered whether the trial court violated McNelton's rights under federal law.[8]  Thus, the state court has not adjudicated Claim Eleven(C) on the merits.

In summary, this court concludes that, out of Claims One, Six(C), Six(E), Six(F), Six(H), Eight(A), Eleven(C), Eleven(E), Eleven(F), Twelve(C), Fourteen, and Fifteen, the Nevada Supreme Court adjudicated only Claims Eleven(E) and Fifteen on the merits.

Next, McNelton argues that the Nevada Supreme Court's dismissal of Claim Twelve(A) and, to the extent they incorporate Twelve(A), Claims Six(E), Eleven(F), and Fourteen was not a default ruling because the Nevada Supreme Court dismissed the claims pursuant to an erroneously-applied retroactivity rule, not the timeliness or successive petition rules the State relies upon to claim procedural default.  Claim Twelve(A) alleges that the first degree murder instructions given to the jury in McNelton's trial created a reasonable likelihood that the jury would convict and sentence on a charge of first degree murder without any rational basis for distinguishing between first and second degree murder, and without proof beyond a reasonable doubt of the statutory elements of first degree murder (i.e., willfulness, premeditation, and deliberation).

McNelton is incorrect in claiming that the Nevada Supreme Court did not bar the claim under Nev. Rev. Stat. § 34.726 or § 34.801.  ECF No.158-25, p. 3.  It was in the context of addressing one of McNelton's good cause arguments that the Nevada Supreme Court relied upon the retroactivity

---

[8] Indeed, it is doubtful that Claim Eleven(C) presents a cognizable federal law claim. *See Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

18

rule.  McNelton had argued to the court that the belated filing of his claim should be excused because the claim was based on a Ninth Circuit case that had just been issued, *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007).  ECF No. 158-21, p. 8-9.  The Nevada Supreme Court rejected the argument because McNelton's conviction had become final several years before *Byford v. State*, 994 P.2d 700 (Nev. 2000), the Nevada case upon which the *Polk* holding was premised.  ECF No.158-25, p. 7-8.

Strangely, McNelton now argues that the Claim Twelve(A) is not based on *Polk/Byford*, but instead, upon on *In re Winship*, 397 U.S. 358, 364 (1970), *Mullaney v. Wilbur*, 421 U.S. 684, 697-704 (1975), *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979), and their progeny.  ECF No. 165, p. 79.  If that is so, it does not change the fact that the Nevada Supreme Court found the claim procedurally barred under Nev. Rev. Stat. § 34.726 or § 34.801.  It merely means that his good cause argument to the Nevada Supreme Court was entirely off base.

Next, McNelton argues that the state court applied an inadequate procedural rule to bar the claims he raised for the first time in his appeal of the denial of his first post-conviction petition.  As noted above, the Nevada Supreme Court rejected those claims because McNelton had not presented them to the lower court.  McNelton correctly points out that the Nevada Supreme Court exercises discretion in applying the rule and will make exceptions, most notably when the claim raises an issue of constitutional dimension and the record is sufficiently developed to address it.  *See Hill v. State*, 953 P.2d 1077, 1084 (Nev. 1998).

It is well-established at this point that a discretionary procedural rule can serve as an adequate ground to bar federal review.  *Walker v. Martin*, 131 S.Ct. 1120, 1127-28 (2011)*; Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).  That is beside the point here, however, inasmuch as the bars imposed by the Nevada Supreme Court in McNelton's *second* state post-conviction proceeding (i.e., Nev. Rev. Stat. § 34.726 and § 34.810) are the ones asserted by the State as foreclosing federal review.  Instead, the issue is whether the claims presented for the first time in McNelton's appeal of the denial of his first post-conviction petition were exhausted by virtue of that presentation.  "Submitting a new claim

1   to the state's highest court in a procedural context in which its merits will not be considered absent

2   special circumstances does not constitute fair presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38

3   (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  Consequently, the adequacy

4   the bar imposed by the Nevada Supreme Court in McNelton's first state post-conviction proceeding

5   is not relevant to this court's procedural default analysis.[9]

6       Next, McNelton challenges the adequacy of Nev. Rev. Stat. § 34.726 and § 34.810 as

7   procedural bars.  He points out that the Ninth Circuit ruled in *Valerio* that the successive petition bar

8   is inadequate to bar federal review.  *See Valerio*, 306 F.3d at 777-78.  By citing to *Valerio*, he has

9   carried his burden under *Bennett;* and the burden "shifts back to the government to demonstrate that

10  the law has subsequently become adequate." *King v. LaMarque*,  464 F.3d 963, 967 (9th Cir. 2006).

11      Respondents argue that the Supreme Court's decisions in *Kindler* and *Walker* undermine the

12  validity of *Valerio* because they establish that a discretionary procedural rule can serve as an

13  adequate ground to bar federal review.  Be that as it may, the cases do not relieve respondents of

14  their "ultimate burden" under *Bennett*.

15      The court in *Valerio* found that the bar was inadequate as of 1990.  *Valerio*, 306 F.3d at 778.

16  Respondents concede that McNelton defaulted his claims in 1996 by failing to include them in his

17  first state habeas petition.  ECF No. 170, p. 46.  Because the analysis focuses on the time the

18  purported default occurred and not when a state court actually applies the bar, respondents must

19  show that Nev. Rev. Stat. § 34.810 had become clear, consistently applied, and well-established by

20  then. *See Petrocelli v. Angelone*, 248 F.3d 877, 886 (9th Cir. 2001) (citing *Fields v. Calderon*, 125

21  F.3d 757, 760-62 (9th Cir. 1997)).  Cases decided after the time of the purported default are generally

22

---

23      [9]  Likewise, the court rejects McNelton's argument that the timeliness and successive petition
    bars could not be properly applied to the claims he had raised in for the first time in his first state post-
24  conviction appeal.  In addition, McNelton's contention that the Nevada Supreme Court applied an
    inadequate bar to his actual innocence claim is also without merit inasmuch as he conflates actual
25  innocence as a substantive claim with actual innocence as grounds to overcome his procedural default.
    It is clear that the Nevada Supreme Court barred the former on timeliness grounds.

26

irrelevant in determining the adequacy of the rule. *See Lambright v. Stewart*, 241 F.3d 1201, 1203

(9th Cir. 2001).  Moreover, in this instance, the inquiry is limited to capital cases. *See Valerio*, 306

F.3d at 776 (recognizing Nevada Supreme Court's "commendable policy" in capital cases of

exercising discretionary *sua sponte* power to overlook the successive petition bar).

Respondents have cited to only a handful of cases that potentially meet the foregoing criteria.

ECF No. 170, p. 46-7.  Consequently, the respondents have not carried their burden of demonstrating

the bar had become adequate between 1990 and 1996.

With respect to Nev. Rev. Stat. § 34.726, however, the Ninth Circuit has rejected the

argument that the Nevada Supreme Court of Nevada inconsistently applied the procedural bar for

time periods up to 1996.  *See Loveland v. Hatcher*, 231 F.3d 640, 642–63 (9th Cir. 2000) (as of

1993); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996) (as of 1996).  There have been no

Ninth Circuit decisions finding the bar inadequate as a general matter.

McNelton contends that the timeliness bar is inadequate because, when he filed his first state

post-conviction petition, the Nevada Supreme Court had yet to clarify that Nev. Rev. Stat. § 34.726

applied to successive petitions at all.  According to McNelton, that did not occur until the Nevada

Supreme Court issued *Pellegrini v. State*, 34 P.3d 519 (Nev. 2001).  The time limitation provision

under Nev. Rev. Stat. § 34.726 was enacted in 1991 and applies to petitions filed on or after January

1, 1993.  *Pellegrini*, 34 P.3d at 525.  Prior to January 1, 1993,  "the sole statutory considerations for

timely filing [of a petition for writ of habeas corpus] under Chapter 34 were laches, pursuant to NRS

34.800, and the prerequisite at former NRS 34.725 that a prior post-conviction petition pursuant to

NRS Chapter 177 had to be timely filed." *Id.* at 529.

While *Pellegrini* arguably stands as the first clear pronouncement by the Nevada Supreme

Court that § 34.726 applies to successive state habeas petitions (*see id.* at 526), there is nothing in

the text of the statute itself to suggest that such would not be the case.  Moreover, the Nevada

Supreme Court had never, prior to *Pellegrini*, taken a contrary position.  Here, McNelton filed his

second state petition approximately fourteen years after the effective date of § 34.726 and six years after the issuance of *Pelligrini*.  Thus, he cannot reasonably argue that, due to ambiguity as to its applicability to successive petitions, the rule was not clearly established at the time of his default.[10]

McNelton further contends that the Nevada Supreme Court, in several instances, has addressed the merits of habeas claims despite the clear applicability of the timeliness bars.  In support of this argument, he cites to several published and unpublished opinions as purported examples of such.  In particular, he focuses on *Rippo v. State*, 146 P.3d 279 (Nev. 2006).

In *Rippo*, the court addressed whether a certain penalty phase jury instruction regarding the consideration of mitigating circumstances was improper. 146 P.3d at 285.  Ostensibly, the Nevada Supreme Court raised the issue *sua sponte* long after the time limit imposed by Nev. Rev. Stat. § 34.726 had expired.

Placed in context, however, the state supreme court's consideration of the issue has little, if any, bearing on whether § 34.726 is consistently applied.   The state petition for writ of habeas corpus that gave rise to the appeal in *Rippo* was, in fact, filed in a timely manner.  *Id.* at 282.  The state district court had already denied Rippo's petition when the Nevada Supreme Court announced the rule in *McConnell v. State*, 102 P.3d 606 (Nev. 2004).[11]  The Nevada Supreme Court found good cause for Rippo raising a *McConnell*-based claim on appeal, as opposed to returning to the lower court, because the legal basis for the claim "was not available at the time he pursued his habeas petition in the district court" and because the claim "present[ed] questions of law that [did] not

---

[10]  Even assuming *arguendo* that the holding in *Pellegrini* was a departure from the previously-accepted construction of Nev. Rev. Stat. § 34.726, a federal court can find a procedural default based on the new law when a significant amount of time passes after a change in state law and the petitioner still fails to raise his claims in state court.  *See Bennett*, 322 F.3d at 579 (finding that petitioner's substantial delay after the California Supreme Court's creation of a timeliness rule was a "continuous" default).

[11]  In *McConnell*, the Nevada Supreme Court ruled that it is "impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated."  *McConnel*l, 102 P.3d at 624.

1    require factual determinations outside the record." *Rippo*, 146 F.3d. at 283 (internal citations

2    omitted).

3         The suggestion that the Nevada Supreme Court disregarded Nev. Rev. Stat. § 34.726 in

4    raising the jury instruction issue *sua sponte* after the one-year time limit is misleading because the

5    issue was ancillary to the court's adjudication of Rippo's *McConnell* claim. The court addressed the

6    issue, not as a freestanding ground for relief, but because of the issue's potential impact on the

7    court's harmless error analysis. *See id*. at 285, 287-88.  Thus, rather than arbitrarily overlook

8    statutory default rules, the Nevada Supreme Court merely considered the impact of the defective the

9    jury instruction in the process of ruling upon a habeas claim (i.e., Rippo's *McConnell* claim) that had

10   been raised in a manner consistent with Nevada law.

11        McNelton's reliance on *Middleton v. Warden*, 98 P.3d 694 (Nev. 2004) is similarly

12   misplaced.  In *Middleton*, the Nevada Supreme Court merely gave the petitioner another opportunity

13   to re-litigate his initial (and timely) state post-conviction proceeding with a new attorney after

14   finding that his existing attorney had "repeatedly violated this court's orders and procedural

15   deadlines" and submitted work product that was "wholly substandard and unacceptable."  98 P.3d at

16   696-98.

17        As for the remaining cases McNelton cites, they show, at most, that the Nevada Supreme

18   Court, in some instances, may exercise its discretion to bypass an applicable procedural bar to reach

19   the merits of a claim or claims.  The court's exercise of discretion in these isolated cases does not

20   necessarily render the rule inadequate to support a state decision in other cases.  *See Walker*, 131

21   S.Ct. at 1130 (explaining that a rule is not automatically inadequate "upon a showing of seeming

22   inconsistencies" and that state court must be allowed discretion "to avoid the harsh results that

23   sometimes attend consistent application of an unyielding rule").

24        In summary, McNelton has not placed the adequacy of §34.726 at issue, as required by

25   *Bennett*. *See King*,  464 F.3d at 967 (noting that when the Ninth Circuit has "already made a

26

1  determination regarding the adequacy of the state procedural rule, the petitioner's method of placing

2  the defense in issue must be modified"); *see also Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir.1998)

3  (holding that petitioner had not met his burden because the court had already held the state

4  procedural rule to be consistently applied and the petitioner failed to cite cases demonstrating

5  subsequent inconsistent application).  Accordingly, this court concludes that Nev. Rev. Stat. §

6  34.726 was a "clear, consistently applied, and well-established" procedural rule at the time of

7  McNelton's default.

8      Finally, McNelton asserts that the procedural default of his claims can be excused, based on

9  the *Martinez* holding discussed above, because he received ineffective assistance of counsel in his

10  first state post-conviction proceeding.  The Court stressed, however, that its holding was a "narrow

11  exception" to the rule in *Coleman v. Thompson*[12] that "an attorney's ignorance or inadvertence in a

12  postconviction proceeding does not qualify as cause to excuse a procedural default." *Id*.  The Court

13  also took care to point out that the exception does not extend beyond claims that counsel was

14  ineffective at trial.  *See id.* at 1320.[13]

15      This court is not persuaded that *Martinez* provides cause to excuse the procedural default in

16  this case.   In *Martinez*, the procedural default at issue was based on an Arizona rule barring

17  successive petitions, such that the petitioner's default was complete when counsel in the

18  initial-review collateral proceeding failed to raise certain claims in that state-court proceeding.

19  *Martinez*, 132 S.Ct. at 1314.  McNelton's default occurred because his second state habeas action

20  was initiated twelve years after the conclusion of his direct appeal.  McNelton's first state-post

21  conviction proceeding concluded in March 2000.  His current counsel undertook representation in

22  May 2000.  Yet, his second state post-conviction proceeding was not initiated until October 2007.

---

24      [12]  501 U.S. 722 (1991).

25      [13]  The Ninth Circuit has since ruled, in *Ha Van Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013),
   that a *Martinez* extends to ineffective assistance of appellate counsel claims.

26

1    The performance McNelton's initial state post-conviction counsel, regardless of how lackluster it

2    may have been, does not account for the seven and half year delay between his first and second

3    attempt at collateral relief in state court. Simply put, there is an insufficient causal connection

4    between the alleged ineffective assistance of McNelton's first post-conviction counsel and the

5    procedural default that serves to bar federal review in this action.

6        Based on the foregoing, the court concludes that Claims One, Two, Three, Four, Five (other

7    than Five(C)), Six (other than Six(D)), Seven, Eight (other than Eight(C)), Ten, Eleven (other than

8    Eleven(E) and Eleven(B)), Twelve, Fourteen (other than the failure to communicate or raise claims

9    Eight(C) and Fifteen on appeal), Sixteen, Seventeen, and Eighteen must be dismissed in accordance

10   with the procedural default doctrine.

11       IV. *Cognizability*

12       Respondents argue that McNelton's claims based on allegations of actual innocence (Claim

13   Three) and of violations of the Interstate Agreement on Detainers (Claim Fifteen) are not cognizable

14   in this federal habeas proceeding.

15       The United States Supreme Court has acknowledged that whether a freestanding claim of

16   actual innocence is cognizable on federal habeas review is an "open question." *District Attorney's*

17   *Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009). *See*, *also*, *Herrera v. Collins*, 506

18   U.S. 390, 417 (1993) (acknowledging the possibility that a freestanding actual innocence claim

19   would exist in the capital context). Given this uncertainty, this court is not prepared, at this point, to

20   dispose of Claim Three on cognizability grounds.

21       As for Claim Fifteen, "the IAD is a federal law subject to federal construction." *New York v.*

22   *Hill*, 528 U.S. 110, 111 (2000). Federal habeas review of IAD violations is limited to errors

23   constituting "a fundamental defect which inherently results in a complete miscarriage of justice [or]

24   an omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S.

25   339, 348 (1994) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Respondents argument

26

for the dismissal of Claim Fifteen goes more to the merits of the claim, rather than to its

cognizability.  As such, the court shall resolve the claim when it addresses the merits of McNelton's

petition.

V. *Evidentiary hearing*

McNelton seeks an evidentiary hearing in order to demonstrate cause and prejudice sufficient

to overcome his procedural defaults, to demonstrate the inadequacy of Nevada's procedural bars, and

to demonstrate that he is entitled to equitable tolling.

Because he seeks a hearing on procedural issues, the restrictions imposed by 28 U.S.C. §

2254(e)(2) do not necessarily apply to McNelton's request.  Even so, he must allege facts which, if

true, would entitle him to relief, in order to be entitled to an evidentiary hearing. *See, e.g., Mendoza

v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006) (holding that petitioner should have been granted a

hearing by the district court because he alleged facts that, if true, may warrant equitable tolling).  "If

the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

court is not required to hold an evidentiary hearing."  *West v. Ryan*, 608 F.3d 477, 485 (9th Cir. 2010)

(internal quotations omitted).

The only "cause" McNelton asserts to excuse his procedural default is the *Martinez* claim

discussed above.  Because that claim fails, as a threshold matter, due to the lack of a causal nexus

between the performance of his first post-conviction counsel and his procedural defaults, an

evidentiary hearing will not assist the court in determining whether McNelton can establish cause

and prejudice to excuse his procedural defaults.  Put another way, the default would not be excused

even if McNelton could prove that his initial post-conviction counsel provided ineffective assistance.

As for the adequacy of the state's procedural bars, McNelton now argues, in the reply in

support of his motion, that an evidentiary hearing is *not* necessary because the respondents have

failed to meet their burden of rebutting his demonstration that the state courts do not consistently

follow the procedural rules.  As discussed above, he is correct with respect to the successive petition

26

bar.  Thus, an evidentiary hearing for McNelton to present evidence on that issue would be pointless. With respect to the timeliness bar, however, McNelton has not met *his* burden of placing the adequacy of §34.726 at issue.  Without any indication from McNelton as to the type of evidence he would present (beyond that which has been already been submitted and considered by the court), the court shall not grant an evidentiary hearing on the adequacy of Nevada's timeliness bar.

Finally, there are no factual determinations bearing on McNelton's arguments in support of equitable tolling that necessitate the consideration of evidence not already before the court.  *Cf. Mendoza*, 449 F.3d at 1071 (hearing required to determine whether petitioner lacked English language ability, was denied access to Spanish-language legal materials, and could not procure the assistance of a translator during the running of the AEDPA limitations period).  McNelton suggests an evidentiary hearing is necessary to determine whether his delay in filing claims "reflects the shared belief of Mr. McNelton, the State, and this Court, that Mr. McNelton would be permitted to raise additional claims for relief after the close of discovery."  ECF No. 174, p. 10.  That determination, however, would not be relevant as to whether "some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 130 S.Ct at 2562.  Because the evidence necessary to resolve McNelton's equitable tolling claim is contained in the existing court record, his motion for an evidentiary hearing shall be denied.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 146) is GRANTED in part and DENIED in part.  For the reasons set forth above, Claims One, Two, Three, Four, Five (except for Five(C)), Six (except for Six(D)), Seven, Eight (except for Eight(C)), Nine, Ten, Eleven (except for Eleven(E) and Eleven(B)), Twelve, Fourteen (except for allegations regarding counsel's failure to communicate or raise claims Eight(C) and Fifteen on appeal), Sixteen, Seventeen, and Eighteen are DISMISSED.

**IT IS FURTHER ORDERED** that petitioner's motion for evidentiary hearing (ECF No. 163) is DENIED.

1      **IT IS FURTHER ORDERED** that respondents shall have **forty-five (45) days** from the

2   date on which this order is entered within which to file their answer to the remaining claims in

3   petitioner's second amended petition (ECF No. 133).  In all other respects, the scheduling of this

4   matter is governed by the scheduling order entered October 7, 2013 (ECF No. 141).

5      DATED:   September 29, 2014.

6

7                                                _____

8                                                UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

28